IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>DOMMANIQUE LEWIS,<br><br>*Defendant.* | Criminal No. 2:23-cr-83 - 1<br><br>Hon. William S. Stickman IV |

**<u>MEMORANDUM OPINION</u>**

WILLIAM S. STICKMAN IV, United States District Judge

On April 25, 2023, Defendant Dommanique Lewis ("Lewis") was indicted by a grand jury with possession of a firearm and ammunition by a convicted felon (18 U.S.C. §§ 922(g)(1) and 924(e)). The pretrial motions that remain pending before the Court are Lewis's Motion to Suppress Evidence (ECF No. 79) and Motion for Hearing Pursuant to *Franks v. Delaware* (ECF No. 80). The Court held an evidentiary hearing on May 18, 2026, and the parties submitted post-hearing briefs. For the following reasons, both motions will be denied.

### I.    FACTUAL BACKGROUND[1]

On May 13, 2022, a manager for the U-Haul located at 3700 Bigelow Boulevard reported to the City of Pittsburgh Bureau of Police that a rented 2020 Chevrolet Express Van with Arizona registration AK03936 that was supposed to have been returned to the U-Haul a week

---

[1] This section encompasses the Court's findings of fact as well as its credibility determinations. When ruling on a suppression motion, the Court takes on the role of fact finder and thus "is responsible for assessing the credibility of the testifying witnesses, weighing the evidence, and reaching any 'inferences, deductions and conclusions to be drawn from the evidence.'" *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019) (quoting *United States v. Harris*, 884 F. Supp. 2d 383, 387 n.2 (W.D. Pa. 2012)).

prior was not returned.  (ECF No. 108, pp. 11-12).  After approval by a City of Pittsburgh Bureau of Police Bureau sergeant, an officer can enter information, like a reported stolen vehicle, into the National Crime Information Center ("NCIC").  The information is then shared with the Real Time Crime Center ("RTCC").  (*Id.* at 7-8).  The U-Haul van was entered into NCIC as stolen and added to the License Plate Reader ("LPR") "Hotlist."  The "Hotlist" is a stolen vehicle list.  The LPR system automatically monitors the list.[2]  When a stolen vehicle hits an LPR, an audible alarm goes off at the RTCC with an image of the vehicle and its location and direction of travel.  (*Id.* at 6-7, 19).

On May 17, 2022, at approximately 2:20 pm, the City of Pittsburgh Bureau of Police RTCC broadcasted that a stolen U-Haul van bearing Arizona registration AK03936 had just hit a LPR camera and was heading inbound towards the Homewood section of the City of Pittsburgh. At that time, City of Pittsburgh Bureau of Police Detective Lucas Burdette ("Detective Burdette") and Detective Nathan Dettling ("Detective Dettling") were on regular proactive patrol traveling outbound on the 8000 block of Frankstown Avenue.  Although they were in plainclothes, they were wearing serial ballistic vests with clearly visible police markings.  They observed a U-Haul van traveling inbound on Frankstown Avenue toward Hamilton Avenue. Detective Dettling turned around and observed that the first three characters of the license plate were AK0.  (ECF *Id.* at 5-6, 20-23).  The detectives then turned their vehicle around and got behind the U-Haul van and confirmed that it had the same registration as the broadcasted stolen van. Based on the RTCC broadcast, they believed that the vehicle was reported stolen.  (*Id.* at 5-6, 8-9).

---

[2] LPR reports can be generated for the prior ten days only.  Thereafter, information is purged. Detective Dettling did not try to obtain an LPR report as he heard the call on dispatch and the prior location of the LPR hits were irrelevant to his investigation.  (*Id.* at 13-14)

The U-Haul van signaled right at the 7300 block of Hamilton Avenue, and Detective Burdette activated the police vehicle's lights and sirens. As the U-Haul van was rolling to a stop near the curb, the front seat passenger of the U-Haul van, Lewis, opened the front door and ignored Detective Dettling's commands to stay in the vehicle. He fled on foot. Detective Dettling eventually detained Lewis in the yard of 7330 Bennett Street after a two minute chase. (*Id.* at 9-10) (Government Exhibit 1). Detective Dettling recognized Lewis during the pursuit and he knew that Lewis had active arrest warrants. (*Id.* at 15-16, 20).

Meanwhile, Detective Burdette observed a black Glock 19 9mm pistol with an extended magazine and a slide selector switch on the front passenger seat from where Lewis had fled.[3] (*Id.* at 24-25). When the detectives ran Lewis's information, they learned that he had a February 10, 2022, arrest warrant for OTN: G 903660-2, from Allegheny County for possession with intent to deliver a controlled substance and a February 16, 2022, bench warrant from the Allegheny County Court of Common Pleas for a probation violation relative to OTN: G 844068-1 that was issued on February 16, 2022. (ECF Nos. 80-4 and 80-5).

The U-Haul van was towed that day to the Zone 5 police station. A search warrant for the van was obtained and executed. (ECF No. 80-4). In addition to the firearm, detectives also recovered from the van a rental agreement dated May 2, 2022, stating that a vehicle was rented at 4:51 pm and due to be returned at 8:30 pm. It could not be confirmed that it was the rental agreement for the van. (*Id.* at 17, 24); (Government Exhibit 2); (ECF No. 80-3). A search

---

[3] When the driver, Thomas Wilson, was asked if he had a firearm, he indicated that he did, that he had a permit to carry the firearm, and that the firearm was in his front pocket. The firearm was recovered from Wilson, and he was arrested due to the U-Haul van having been reported as stolen. The charges against Wilson were not pursued as a rental contract for the U-Haul van was never generated. (*Id.* at 11); (ECF No. 80-3).

3

warrant was obtained on May 20, 2022, for a sample of Lewis's DNA to be compared to any DNA found on the Glock 19 firearm recovered from the U-Haul van. (ECF No. 80-5).

## II.    ANALYSIS

Lewis seeks to suppress all the physical evidence obtained during the search of the U-Haul van in which he was a passenger, as well as the DNA evidence. (ECF No. 78). First, he argues that suppression is warranted because the police did not have reasonable suspicion to stop the U-Haul van. Second, he argues that he was illegally seized. (*Id*.). Third, he argues that the affidavits in support of the search warrants misstated and omitted material facts in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 80). He contends that the alleged omissions and misstatements were material to the finding of probable cause and that consideration of the affidavit with the inclusion of the omitted facts would have resulted in a lack of probable cause. None of his arguments have merit.

### A. Reasonable suspicion existed to stop the U-Haul van.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). *See also Kansas v. Glover*, 589 U.S. 376, 380 (2020) ("[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" (citing *United States v. Cortez*, 449 U.S. 411, 417–418 (1981))). "Reasonable suspicion" is a "less demanding standard" than probable cause, but "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123 ("The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity."

(quoting *Terry*, 392 U.S. at 27)). "The test is one of reasonableness given the totality of the circumstances, which can include [a person's] location, a history of crime in the area, [a person's] nervous behavior and evasiveness, and the officer's 'commonsense judgments and inferences about human behavior.'" *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Wardlow*, 528 U.S. at 124–25).

The detectives were acting on reasonable suspicion that criminal activity was occurring on May 17, 2022. On May 13, 2022, a manager for U-Haul reported that a rented 2020 Chevrolet Express Van with Arizona registration AK03936 that was supposed to have been returned to the U-Haul a week prior was not returned.[4] (ECF No. 108, pp. 11-12). On May 17, 2022, at approximately 2:20 pm, the City of Pittsburgh Bureau of Police RTCC broadcasted that a stolen U-Haul bearing Arizona registration AK03936 had just hit a LPR camera and was heading inbound towards the Homewood section of the City of Pittsburgh.[5] Detectives Burdette and Dettling observed a U-Haul van traveling inbound on Frankstown Avenue toward Hamilton Avenue. Detective Dettling turned around in his seat and observed that the first three characters of the license plate were AK0. (ECF No. 108, pp. 5-6, 20-23). The detectives then turned their vehicle around and got behind the U-Haul van and confirmed that it had the same registration as the broadcasted stolen U-Haul van. Based on the broadcast received from the RTCC, they believed that the vehicle was reported as stolen. (5-6, 8-9). Given these circumstances, the detectives had adequate reasonable suspicion to stop the U-Haul van. Accordingly, the Court

---

[4] The failure to return a rented vehicle can constitute several different criminal violations under Pennsylvania law – theft by unlawful taking (18 Pa. C.S. § 3921(a)); receiving stolen property (18 Pa. C.S. § 3921(a)); unauthorized use of an automobile (18 Pa. C.S. § 3928); and theft of leased property (18 Pa. C.S. § 3932).

[5] The Government correctly notes that the detectives were permitted to rely on this dispatch communication. (ECF No. 116, p. 5). *See United States v. Hensley*, 469 U.S. 221, 231-32 (1985); *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997); *United States v. Torres*, 534 F.3d 207, 210-13 (3d Cir. 2008).

will deny Lewis's motion insofar as it is based on a claim that the detectives lacked reasonable suspicion for the initial traffic stop.

### B. The seizure of Lewis was lawful.

As the U-Haul van was rolling to a stop after Detective Burdette activated the police vehicle's lights and sirens, the front seat passenger of the U-Haul van, Lewis, opened the front door and ignored Detective Dettling's commands to stay in the vehicle. Lewis fled on foot. The Court recognizes that "the Supreme Court has never held that unprovoked flight alone is enough to justify a stop." *United States v. Navedo*, 694 F.3d 463, 472 (3d Cir. 2012) (quoting *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004)). But "flight upon noticing police, plus some other indicia of wrongdoing, can constitute reasonable suspicion." *Id.* (emphasis in original) (quoting *Bonner*, 363 F.3d at 217). As the Supreme Court has noted, "Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124.

Lewis's flight was especially suspicious since the U-Haul van was reported as stolen. There was no rational justification for him to run, except to evade the police. Lewis's flight bolstered the detectives' level of suspicion. During the two minute chase of Lewis, Detective Dettling recognized Lewis and Detective Dettling knew that Lewis had active arrest warrants. (15-16, 20). Given Lewis's flight from the reportedly stolen U-Haul van, and the active arrest warrants, the seizure of Lewis was justified.

### C. The firearm was abandoned and in plain view.

No Fourth Amendment seizure occurs when the government appropriates abandoned property. *Abel v. United States*, 362 U.S. 217, 241 (1960). Abandonment occurs when a person relinquishes their reasonable expectation of privacy in an item or object. *United States v. Fulani*,

368 F.3d 351, 354 (3d Cir. 2004). Whether an individual has a reasonable expectation of privacy is determined "from an objective viewpoint," *id.*, and it is a question of fact for the Court to determine, *United States v. Minker*, 312 F.2d 632, 634 (3d Cir. 1962).

While Detective Dettling was chasing Lewis, Detective Burdette was standing outside of the U-Haul van lawfully interacting with the driver. The driver told Detective Burdette that he had a firearm in his front pocket and he had a permit to carry it. Detective Burdette observed a black Glock 19 9mm pistol with an extended magazine and a slide selector switch on the front passenger seat from where Lewis had fled. Viewing the totality of the circumstances, the Court holds that when Lewis — a mere passenger in the U-Haul van — fled from the scene of the stop, he clearly demonstrated an intent to abandon any items he may have possessed in the vehicle. He purposefully chose to distance himself from the firearm on the passenger seat. Because Lewis voluntarily and intentionally abandoned the firearm in the U-Haul van when he fled the scene of the traffic stop, he cannot now seek to suppress the firearm.

The plain view doctrine clearly permitted the seizure of the firearm.[6] First, Detective Dettling did not violate the Fourth Amendment in arriving where he viewed the firearm – i.e., outside the driver's side door – as the Court holds that the detectives initiated a lawful traffic stop. Second, the incriminating nature of the firearm was readily apparent. It was sitting on the seat Lewis had fled from, and the driver readily claimed ownership of a firearm lawfully concealed on his person. Third, Detective Dettling had a lawful right of access to the firearm. He, or any member of the public, could easily view the passenger seat through the open

---

[6] There are three requirements for valid seizures of evidence in plain view. First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself. *United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (internal quotation marks omitted). *See also Horton v. California*, 496 U.S. 128, 136 (1990).

passenger door or the closed passenger side window. It is well-established that police officers may access "'that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.'" *United States v. Hawkins*, 646 F. App'x 254, 257 (3d Cir. 2016) (quoting *Texas v. Brown*, 460 U.S. 730, 740 (1983)). While the detectives certainly could have seized the firearm under the plain view exception, or even during an inventory search prior to towing the vehicle, they sought a search warrant instead.

**D. The firearm was recovered during the execution of a valid search warrant.**

Initially, the Court notes that it is of the opinion that Lewis lacks standing to challenge the search of the vehicle. "It is clear that a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car." *United States v. Baker*, 221 F.3d 438, 441–42 (3d Cir. 2000) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). Lewis, a passenger who fled from the U-Haul van, has failed to demonstrate to the Court's satisfaction that he had a reasonable expectation of privacy in the U-Haul van or its contents.

Nonetheless, to the extent that Lewis challenges the validity of the search warrants for the U-Haul van (ECF No. 80-4) and his DNA (ECF No. 80-5) by arguing that the warrants were issued in the absence of probable cause based on material misstatements and omissions (ECF Nos. 78, 30, and 114), the Court disagrees. It holds that the language in the affidavits was not misleading and there were no omissions. Lewis was not entitled to a *Franks* hearing,[7] although

---

[7] To obtain a hearing, *Franks* requires a defendant to make a substantial preliminary showing that the affidavit establishing probable cause contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 171. In order to make this showing, a defendant cannot rest on conclusory allegations or a "mere desire to cross-examine." *Id.* at 171. Rather, a defendant must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as affidavits or sworn or otherwise reliable statements of witnesses, or provide a satisfactory explanation of their absence. *Id.*; *see also United States v. Desu*, 23 F.4th 224, 234 (3d Cir.

the affiant to the warrant, Detective Dettling, actually testified at the evidentiary hearing and Lewis was able to cross-examine him. Additionally, the Court permitted counsel for Lewis to delve into some matters related to the LPR readers and the circumstances of the U-Haul van being reported stolen. In light of all the information before the Court, it holds that the Honorable Kelly E. Bigley of the Allegheny County Court of Common Pleas ("Judge Bigley") had a substantial basis to conclude that probable cause existed for authorizing the search of the U-Haul van and seizure of Lewis's DNA.

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) (citing *Yusuf*, 461 F.3d at 383–84). "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know.'" *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (quoting *Wilson v. Russo, 212 F.3d 781*, 783 (3d Cir. 2000)). "'[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.'" *Desu*, 23 F.4th at 234 (quoting *Wilson*, 212 F.3d at 783). If a defendant succeeds in establishing that that there were false assertions or reckless omissions of fact, the defendant must then demonstrate that such assertions or omissions were "material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3rd Cir. 1997).

---

2022) (citing *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir. 2006)). To reiterate, "[t]o make the initial showing, a defendant must allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

9

First, Lewis claims that the LPR hits could not have occurred as claimed in the affidavits. He believes an LPR camera could not have captured the U-Haul van traveling inbound towards Homewood because the LPR camera points outbound, not inbound. (ECF Nos. 80, 102, and 116). Even if he is correct, the Court holds that it does not matter as the LPR information was included to inform Judge Bigley how the detectives were advised that a reportedly stolen U-Haul van was in the area where they were patrolling on May 17, 2022. Law enforcement officers are not required to include every detail, like the exact location of LPR cameras, in an affidavit of probable cause. *See United States v. Ventresca*, 380 U.S. 102, 108 (1965) (Warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity ... have no proper place in this area."); *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) ("We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip."). As was made evident at the evidentiary hearing, Detective Dettling had no knowledge of the exact location of the LPR cameras in the area he was patrolling.

Second, Lewis believes it dispositive that Police Detective Michael Chlystek documented in his supplemental report that he "began monitoring the LPR reader for the vehicle (Bennett St. & Tokay St) at 1420 hours" (ECF Nos. 80-3), but the affidavits of probable cause for the search warrants state that, "at approximately 1420 hours the Real Time Crime Center broadcast that a stolen U-Haul had just hit a license plate recognition camera located at Oakwood St. and Tioga St. and was heading inbound towards Homewood." (ECF Nos. 80-4, p. 2 and 80-5, p. 2). The Court holds that this does not constitute a false or misleading statement. The affidavit only supplies an approximate time and location relative to a LPR hit on May 17, 2022. As previously

noted, the LPR information was included in affidavits to inform Judge Bigley how the detectives were advised that a reportedly stolen U-Haul van was in the area where they were patrolling on May 17, 2022.[8]   At the evidentiary hearing, Detective Dettling confirmed that at approximately 2:20 pm, he heard the RTCC broadcast about the stolen U-Haul van bearing Arizona registration AK03936 heading inbound towards the Homewood section of the City of Pittsburgh.

Third, Lewis claims that Detective Dettling mispresented the status of the U-Haul van by including within the affidavits that the van was "confirmed to be stolen." (ECF Nos. 80, 80-4, 80-5, and 113).   As adduced at the evidentiary hearing, a U-Haul manager reported to the police that a van was rented to an unknown individual and that the vehicle was supposed to have been returned approximately one week prior.   The vehicle information was entered into NCIC as a stolen vehicle.   On May 17, 2022, the information entered was still active – i.e., that the van was reported stolen – and the RTCC broadcasted that an LPR reader captured the stolen van.   The Court holds that the inclusion of the phrase "confirmed to be stolen" in the affidavits was not a false or misleading statement.[9]

---

[8] The Court does not find the testimony from defense witness Thomas Scott Shaheen ("Shaheen") to be of significant evidentiary value in resolving Lewis's challenge to the warrants. There is no question that information about the May 17, 2022, LPR hits was not preserved. Shaheen conducted a visual inspection of Tioga Street in November 2022 to locate LPR cameras. He apparently located one at the intersection of Oakwood and Moosehart Streets. (ECF No. 108, pp. 27-28).   According to Lewis, "Photographs of the LPR camera establish that the camera is pointing in the opposition direction of the of Frankstown Road and Bennett Street, which are in Homewood." (ECF No. 114, p. 5).   But Shaheen had no idea how often LPR cameras are removed for maintenance (or moved to different locations), and he could not recall if he inspected the intersection of Bennett and Tokay Streets for an LPR camera.   (*Id.* at 31). Regardless, in crafting the affidavit, Detective Dettling did not know where LPR cameras were placed throughout the City of Pittsburgh or exactly where the LPR reader hits of the U-Haul van occurred on May 17, 2022, or in the preceding days.   He was merely relying on information identifying a stolen vehicle that he heard on the RTCC broadcast.

[9] Notably, Detective Dettling had no knowledge of the initial information provided to police about the allegedly stolen U-Haul van that led to the NCIC report.   Based on a supplemental

11

Fourth, Lewis believes that the illegality of possessing a Glock firearm was omitted from the affidavits. (ECF No. 83). The Court disagrees. It concurs with the following statements from the Government:

> First, the affidavits identifies that the Glock had a slide selector switch making it a fully automatic pistol. (Docs. 80-4 and 80-5 search warrant page 3). It is commonly known that possession of a fully automatic pistol is illegal in an of itself. Second, the affidavits details that the Glock was reported stolen out of Penn Hills. Just as it is illegal to possess a fully automatic pistol it is also illegal to possess a stolen firearm.

(ECF No. 116, p. 18).

In summary, the Court holds that none of the language in the affidavits was false or misleading, and nothing was omitted. There is nothing before the Court to suggest that Detective Dettling acted deliberately, recklessly, or was grossly negligent when preparing the warrants so as to mislead Judge Bigley. The Court further holds that the information provided in the warrants, along with the logical inferences from all the averments, provided a substantial basis for Judge Bigley to reasonably conclude that Lewis, who was a fugitive and a person prohibited from possessing firearms, was engaged in the illegal activity of unlawfully possessing a stolen firearm.

## E. The good faith exception would also apply.

Exclusion of evidence has always been a last resort, not a first impulse. *United States v. Katzin*, 769 F.3d 163, 171 (3rd Cir. 2014) (citation omitted). It is appropriate only when law enforcement conduct is sufficiently deliberate, reckless, or grossly negligent, such that deterrence holds value and outweighs the cost of suppression. *Id.* (citations and internal quotations

---

report included in Lewis's exhibits to his motion (ECF No. 80-3), it appears that the day after the search warrant was obtained for the U-Haul van, Detective Michael Chlystek spoke with a U-Haul manager who stated that they had no documentation as to who rented the vehicle – no rental agreement existed. As such, Detective Chlystek informed him that no charges could be pursued as to the vehicle. The case was then closed as to the arrest of the driver.

omitted).  The good faith exception applies when an officer acts "upon an objectively reasonable good faith belief in the legality of their conduct."  *United States v. Vasquez-Algarin*, 821 F.3d 467, 483 (3d Cir. 2016) (quoting *Katzin*, 769 F.3d at 182).  The inquiry focuses on "'whether a reasonably well trained officer would have known that the search was illegal' in light of [the] constellation of circumstances."  *Katzin*, 769 F.3d at 182 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).  In most cases, the good-faith showing is not a difficult one for the Government to make: "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."  *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001).

First, the Court holds that the detectives reasonably suspected that the U-Haul van was engaging in criminal activity based on the RTCC report that it was a stolen vehicle.  When the U-Haul van was stopped, Lewis, who had active arrest warrants, fled from the passenger's seat. A firearm was sitting in plain view on the passenger seat, and the driver claimed ownership of a firearm lawfully concealed on his person.  Against this factual landscape, the Court concludes that the detectives had an objectively reasonable good faith belief that their conduct in stopping the vehicle complied with the strictures of the Fourth Amendment.  *See e.g., See United States v. Dippre*, 695 F. Supp. 3d 604, 611-12 (M.D. Pa. 2023) (finding good faith exception applicable where officers relied on NCIC) to discover a valid warrant and had no reason to believe the warrant was obtained improperly) (citing *Capone v. Marinelli*, 868 F.2d 102, 105 (3d Cir. 1989) (finding it was reasonable for officer to rely on an NCIC bulletin that contained a warrant for defendant's arrest)).

Second, as to the search warrants, the United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

13

1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

2) when the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (citation omitted). These limited exceptions involve conduct that is "deliberate, reckless, or grossly negligent." *Herring v. United States*, 555 U.S. 135, 144 (2009).

As the Court has held herein, there is nothing in the record to suggest that Judge Bigley issued the warrants in reliance on deliberately or recklessly false affidavits, or that she abandoned her judicial role and failed to act in a neutral and detached manner. Similarly, any claim that the warrants were so facially deficient that they failed to particularize the place to be searched or the things to be seized is unsupported by the record. Finally, as discussed above, the affidavits set forth sufficient indicia of probable cause and they were not facially deficient as to such matters. Thus, it was entirely reasonable for investigating officers to rely on the warrants. The Court is satisfied that the law enforcement officers acted with a reasonable, good-faith belief that they were operating lawfully pursuant to valid search warrants. The Court holds that the good faith exception would apply.

### F.  Conclusion.

For the foregoing reasons, Lewis's motions will be denied by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

August ___7___, 2026

14